Inc. On behalf of the Aquiline, Mr. Charles Tuffley. On behalf of the Aquiline, Mr. Steven Johnson. Mr. Tuffley, and thank you for being here this morning. I guess you've come a distance. Well, I appreciate the court permitting me to appear before it this morning on such short notice. My name is Charles Tuffley. I represent the Plaintiff Appellant of Lexington Insurance Company. And very briefly, this case involves a claim by our client, an insurer, of an apartment building against a tenant, a corporate tenant, Northstar Aerospace, for fire damage alleged to have been caused by the negligence of the occupant of the apartment. We haven't done any discovery in this case, but presumably they're a contract employee or an employee of Northstar Aerospace. The lower court dismissed our claim on the basis that it believed that the tenant was a co-insured under the plaintiff's policy and that, therefore, since insurer can't sue, it's only insured that the claim was barred. And the lower court relied upon Dick's Mutual, Town Realty, and other cases that have addressed this issue in Illinois. Counsel, what can you provide? What lease provision specifically can you call our attention to that evinces beyond question that the parties intended that the defendant would be liable for negligent fire damage? I mean, other than this admitted language that says they are basically suggesting or advising the defendant to maintain where there's insurance. But what specific clause are you hanging in your head that requires that? Well, there's that clause, Your Honor, and then there's one other clause that, although it's contained in our complaint, I noticed when I was reviewing our brief, is not contained in the brief. And that is found on page two, the top of page two of the lease, and it's called, it's entitled Use of the Premises. And basically it says that neither lessee or persons residing with or visiting lessee shall suffer, perform, or permit any act or practice that may damage the reputation of the building, be injurious to the building, and operation thereof. And then the last sentence says lessee will be responsible for the conduct of the persons residing with the visiting lessee. Now, it's our view that when you take that language, which says that the lessee will be responsible for injuries to the building, and then you tie that to the language that advises the tenant to obtain insurance to protect itself in the event that the property is damaged. By the tenant's negligence, that there is a indication and intent within the lease that the tenant will be responsible for damage to the building caused by its negligence. But does the lease provision itself specifically talk about fire damage? It doesn't. Because, Your Honor, it could apply to any damage. It could apply to fire damage. It could apply to water damage. It could apply to any damage that was caused by the negligence of the tenant. Well, that makes logical sense. I think we would have to acknowledge. But the problem then becomes, how do you get around town realty, which noted there, the lease language of a general nature that would provide the tenant would be responsible for any damage to the premises, and that's what you're suggesting? Lessee says, but town says, because it made no specific reference to fire damage, it was insufficient to demonstrate a clear intent. So my question is, how do you get around the holding in town? Well, of course, town realty involved simply a yield back clause that says the tenant will return the property in the same condition as it was when leased. But the way, Your Honor, that I read these cases, it's not so much whether the lease mentions fire or not. It's whether or not, looking at the four corners of the lease, there is an intention by the parties that the tenant be responsible for damages caused by its negligence. And in our view, that's what distinguishes the facts of this case from town realty, from Dick's Mutual, from Cincinnati Insurance, and the older case, Cerny Pickens. In none of those cases was there language which both referenced the responsibility of the tenant for damage and also a provision relating to insurance where there was an attempt, in our view, to allocate the risk of loss between insurance companies. Let's take it one step further. Here's another issue that I'd like to address. Are you acknowledging that paragraph 29 of the lease provided that each resident is advised to maintain the renter's insurance, protecting his or her belongings in the owner's property? That's what it says, correct? Yes, sir. If the parties wanted to specifically obligate the defendant to protect their property, couldn't they have provided that the tenant is required to or is obligated to or has to, quote-unquote, has to maintain insurance? What does advised mean to the average person? That would suggest to me as, hey, it's probably a good idea, but you're not legally obligated. I think this thing could have been tightened up substantially, couldn't it? Well, I think it's not so important, Your Honor, whether the lease says advised or shall purchase liability insurance. In our view, what's important here is when you look at the four corners of the lease, that there is an intent to allocate the risk of loss between insurers. Now, we can't, in this lease, we can't make the tenant purchase insurance, but the lease says you're going to be responsible for damage. Why can't you make the tenant purchase insurance? Why can't you legally obligate a required debt to obtain insurance? Well, we could. I guess the lease could have said that. It doesn't, but I think notwithstanding that, that there is, and remember, we're dealing here not with two individual tenants. What we're dealing here with is a lease that was with a corporation. Who then brings one of their employees in, presumably to take the apartment, you're saying? Pardon me? Who then brings one of their employees in to take the apartment. The corporate employee goes into the apartment. Yes, yes. And defense counsel makes the argument, he said, well, basically, resident refers to the occupants of the apartments. That really isn't the case, because if you look at the third page or the addendum of the, addendum A of the lease, it specifically says, this lease is between North Aerospace Chicago, Inc., here and after known as the resident. So when the insurance provision references the resident, it isn't referring to the occupants. It's referring to the defendant, Northstar Aerospace. And there are a number of things. I mean, we don't know, because we haven't done any discovery. We don't know what the defendant or what provisions the defendant made to protect itself against this particular exposure. For example, corporations or businesses that rent property typically buy what is called fire legal liability insurance, which is very common and protects them against liability for their damage to a building that they either lease or rent. I notice that in the Cincinnati case, which was decided by this court, there's a reference, and I mention it because there was a, this lease talks about renter's insurance. And there was some discussion in Cincinnati insurance about what renter's insurance is. Renter's insurance, based on our experience, contains two components, just like our homeowner's policies contain two components. The first component is it provides property coverage. So renter's coverage, they don't own a home, so it provides property coverage for the, provides property coverage for the personal property. And also, there is a liability component to renter's policies, just like we have in our homeowner's policies. But, Your Honor, I think if you, as the cases seem to instruct, if we look at all the provisions of this lease, seems to me that to find that there was no agreement that the lessee be responsible for damage to the building caused by his negligence, considering the two provisions, and the advice to obtain insurance to protect himself against that exposure, that the court has to ignore, basically, those provisions which relate to liability of the tenant. Well, before we even get to liability of the tenant, and I'm assuming this is what the trial court did, since you said there's no discovery, there are no issues, the court looked at the insurance provision. The insurance provision has a shall in it, defendant shall carry insurance, but each resident is advised to maintain. And then the addendum says resident understands that general insurance policies covering apartment buildings do not insure resident's personal belongings against fire theft. Even though Northstar is a corporation, we still, I'm assuming you were, not you personally, but someone on your client's behalf drafted this particular lease, and it's not, it doesn't say you have to do this. We have to look at the plain language of the lease before we start talking about negligence or otherwise, and if there was no intent pursuant to this plain language under insurance, we don't really need to get beyond that, do we? Well, what the court is referencing is quite common in leases, and that's where the lessor says, we're going to provide property insurance for our property, you should provide property insurance for your own property. Now, often tenants, they don't buy renters insurance, they don't insure their own property. Even though Northstar is a corporation, for the general public, property insurance, what is property insurance? It's for the property, including the building, so we're dealing with a lease that you're providing to your tenants who may not understand the nuances that you're making here today because it's not that clear in the lease. Well, I don't necessarily agree with that, Your Honor, because this is a corporation. It is, this lease is executed by the controller of the corporation who, assuming has some knowledge, we don't know what the breadth of their experience is with respect to renting apartments for contract employees or employees. We really don't know that. But, I mean, even the insurance provision is initialed by the controller. His initials appear right under this insurance provision. And I know that the defendant discussed in a lot of detail this advice versus shall purchase insurance, but I think, as I say, this doesn't require the tenant to buy insurance. It's up to the tenant to do whatever it feels it needs to do to protect its exposure for negligent damage to the building. And it certainly, in our view, indicates that the lease attempts to allocate damages or responsibility for damages between two insurers. And I think that's what this boils down to, basically. Of course, in subrogation, one of the underlying principles is that the party that is responsible for the damage should ultimately end up paying for that damage. And I think that's what this lease attempts to do. And in none of these other cases, do you see both language that says the tenant will be responsible for injury to the property and a discussion regarding you should obtain insurance to protect yourself against that exposure. And so, as I said, I think that you really have to ignore those provisions in order to find that the tenant is a co-insured under Lexington's policy. All right, Mr. Tuffley, you'll have an opportunity for rebuttal as soon as Mr. Johnson has concluded. Okay, certainly. Thank you. Good morning. Good morning. May it please the Court, Mr. Tuffley. My name is Steve Johnson and I represent Northstar Aerospace, the defendant, Apple Lee, in this case. Your Honors, in listening to the questions raised so far, I am heartened to hear the questions because I think they get to the nub of this issue. Well, now I'm going to throw a ringer at you. Why aren't these two insurance provisions clear? Why shouldn't Northstar, first of all, but then other people understand that they better get insurance? Well, what I would point the Court to is the long history of these cases that actually began before Dix Mutual, but then Dix Mutual clearly went on to expand the idea of implied co-insured or co-insured status of tenants for good reasons. The reasons that the courts look to, and if we go back to the Anderson decision decided earlier by this Court, you look historically for specific statements regarding fire insurance so that people understand what is being talked about. Here, I believe the landlord showed that it knew how to properly protect itself for claims regarding fire. By when we look at the provision that Justice Hutchinson asked Mr. Tuffley about, that insurance provision clearly shows that they know how to protect themselves against claims of fire. But if you then look at the language contained in that insurance provision and compare it to the earlier insurance provision that says each resident is advised to maintain, and why are they advised to maintain? Not because the landlord is going to look to them in the event they negligently cause a fire to pay for that damage. They come right out of the box and they say, buy renter's insurance to protect your household goods and personal property. And then after it, the language does say, and to protect owner's property in the event of damage due to negligence or misconduct of the resident. So what would be covered? If fire isn't based upon the history of cases, what would be covered? If the tenant went and did graffiti, or somebody in there, somebody who they invited to the premises did graffiti. That's the type of thing that we're talking about here. Fire damage has always historically, in the long history of these cases, been carved out separately and explicitly in the court saying, hey, if you want to protect against fire damage, you mention fire damage. Because it's so extensive, it's more damaging than... The scope of damages that you might potentially be responsible for are significant. They're not the normal thing that you would expect to be responsible for, for the common sense reason that, why have 50 people buy insurance to cover something that one person can buy and cover the exact same risk? Speaking of common sense, let me just interject.  How do you address his argument that, yes, if you read these provisions in isolation, you read them in a super-hyper-technical sense, it doesn't say there's an obligation or requirement to maintain insurance. But common sense, looking at the totality of the document, really tells you that there should be insurance, and the defendant should be a co-insurer. So how do you specifically respond to his common sense argument? Well, I would say that, based on the history of cases in the state of Illinois, and the whole purpose behind subrogation being an equitable provision, you've got to first have clean hands when you come to the table. The insurance carrier and its insured, Lexington Insurance, through Penobscot Management, they could come into this with clean hands by expressly stating what it is that they're asking this court to find. They didn't. They got too cute by half, quite frankly, and the court shouldn't reward them for being cute. Express, the courts have said, Justice Heupel couldn't have been more strong in his opinion, where his dissent in Dix, where he just said, boom, what the majority is deciding here makes everybody a co-insured, unless there is an express description to the contrary. This isn't express. If anything, it's kind of half-baked. It doesn't go there. If you read this, you don't know fairly that the landlord is going to look to you as a tenant or a resident of that property to pay them in the event of your negligence. Because it says advised. All it says is advised. But resident is defined here as a corporation. I frankly didn't see that until this was brought up because my copy of the lease is not very good. So if it says that, I can. That changes the picture, doesn't it, in terms of how you read this clause and the responsibilities and the totality of what's within the four corners. If you know that there's a corporation and you see the initials under that section that was pointed out by Mr. Tuffley. I don't think respectfully, Justice, that it does. And here's why. I think our argument is stronger if you can separate the word resident from tenant or lessor from lessee. But even assuming that Northstar is the resident for purposes of this policy, I'll do that. It's still the policy language or the lease language itself still does not say that the resident shall purchase insurance for the protection of the landlord. It does say that the landlord shall not be liable for even its own negligence. If it causes damage to your property, we're not liable. So they knew how to do it. They didn't do it. And when it says clear intent, when that's what all the cases say, clear intent, this language is not clear intent. To find it would really change 20 years of case law and certainty that both landlords and tenants have known since Dick's that, hey, if you want to carve out an exception where you want to be different from everybody else and you want to make your tenants responsible, come right out and say it. Put it in the lease. This drafter of this lease knew how to do it. They did it to protect themselves. They weren't straightforward. They weren't clear. They didn't evince a clear intent to have the tenant ultimately be responsible for damages by fire. So in other words, you're looking to the body of case law that says when you're talking about construing a lease, if there's some uncertainty or ambiguity, it's construed against the lessor and the lessor's favor. Absolutely. As Justice, as you indicated in your questioning of Mr. Tuffley, I see town and realty as directly on point, factually and on the law, and that's what that court found. We don't know expressly why Judge Nolan ruled the way he did based on the nature of his ruling, but we do know from his limited oral ruling before the bench that what he found was that the case law was pretty clear. It had been that way for a long time. He didn't see any reason to diverge from that case law right now, and any ambiguity in this lease clearly should be construed against the drafter, and that's the people at Penobscot and ultimately their insurer who stands in their shoes today with this court. Other than that, I don't believe I need all of my time. If the court has any other specific questions, I'd be happy to answer them. I would just say that the history of the case law is so clear, the commercial basis behind it is so reasonable to diverge from that in this case and create uncertainty going forward. If language such as this were to be found to be clear and convincing of an intent of tenants to be responsible for fire damage, I think it would really, really change what we know to be the law in Illinois, and I would ask this court to affirm Judge Nolan's ruling because I think it would be a bad decision for you to diverge from that. Thank you, counsel. Thank you. Mr. Tuffley, why would it be a good decision for us to diverge from 20 years of established law here in Illinois? Well, Your Honor, because I don't think that this decision, reversal of this decision, changes 20 years or 25 years because the cases instructed, all of these cases are to be looked upon on their own merits. You have to look at each lease to determine what the intent of the parties are. And if what they say, what the defendant argues is true, then in the insurance provision, why wouldn't the policy simply say that we advise that the renter maintain insurance on their household goods? And not say, and to protect owner's property in the event of damage due to negligence of the misconduct of the resident. If what they say is true, then that language shouldn't even be in this lease. It entirely ignores the provisions of the lease in this case, which distinguishes this case and this lease from all the other cases that have come before it and that are cited in our brief. This isn't an issue of clean hands. This isn't an issue of Lexington attempting to be cute. We have two sophisticated parties that are bargaining. They are executing a contract, and they're free to contract for anything that they want. This isn't a public policy issue. This is simply interpretation of a lease. Looking at the four corners of the lease, these people agreed. These two commercial entities agreed that number one, the lessee was going to be responsible for damage, and number two, we advise you that you should obtain insurance to protect yourself in the event that the property is damaged as a result of your negligence. I don't think whether it says advise or shall between two commercial entities really is significant or that the case should turn on that particular word. We have to look at the policy or the lease as a whole. Well, then Mr. Johnson then goes on to say that the fact that Northstar is a corporate entity makes this even more not the advise part but the negotiation part. When it says Penobscot's property to protect in the event of damage due to negligence or misconduct of resident, the corporate entity would go, okay, well, there's nothing specific there, and the case law seems to say there's no specific reference to fire because fire apparently is a much broader in scope type of damage. If somebody does graffiti, as he indicated, it could be on the outside of the building, but it doesn't destroy the building. Fire is much bigger, and for whatever reason, the courts in Illinois have chosen to single that out. So how do you respond to that one? Well, I don't think the word fire is significant. There are a number of things that tenants do to damage apartment units that they're in. I don't think there can be a number of causes. So I don't think that fire is significant, and frankly, I don't see that fire reviewing the prior cases is that significant. Fire, as opposed to some other negligent act, letting your bathtub overflow and damaging other units, just a number of things that can occur. So I don't think that fire, even reading these cases, all the prior cases, is that important. But I do think that it is important that this leads, provides that you're negligent, you're responsible, doesn't make any difference what the damage, whether it's by fire or otherwise, and we advise you to obtain insurance to protect yourself. I think that reflects an agreement between these two commercial entities to allocate the risk of loss, to allocate the risk of loss so to the extent that in the event the property is damaged by the tenant's negligence, that they should, that their insurer is going to be responsible. That their carrier is going to be primarily responsible to fix the damage. Any other questions? Thank you very much. Thank you. Gentlemen, thank you for your argument. We will take the case under advisement. We will give you a decision in due course.